J. Andrew Coombs (SBN 123881)
Annie Wang (SBN 243027)
J. Andrew Coombs, A Prof. Corp.
517 East Wilson Avenue, Suite 202
Glendale, California 91206
Telephone:  (818) 500-3200
Facsimile:   (818) 502-3201

Matthew N. Kane
Donnelly, Conroy, & Gelhaar LLP
One Beacon Street, 33d Floor
Boston, Massachusetts 02108
Telephone: (617) 720-2880
Facsimile: (617) 720-3554

Attorneys for Plaintiffs Elsevier Inc.,
Elsevier B.V., Elsevier
Limited, Elsevier Ireland Limited,
John Wiley & Sons, Inc., Wiley Periodicals, Inc.,
Wiley-Liss, Inc., John Wiley & Sons, Ltd.,
Wolters Kluwer Health, Inc., and
Blackwell Publishing, Ltd.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Elsevier Inc., Elsevier B.V., Elsevier Limited, Elsevier Ireland Limited, John Wiley & Sons, Inc., Wiley Periodicals, Inc., Wiley-Liss, Inc., John Wiley & Sons, Ltd., Wolters Kluwer Health, Inc., and Blackwell Publishing, Ltd., <br><br> Plaintiffs, <br><br> v. <br><br> Kiuchi Shoten Co., Ltd., Hideo Kiuchi, I and U, Inc. (a/k/a "Crescendo Books" and "Book Cube"), Lan Tu (a/k/a "Joanne Tu"), Ichihiro Toyosato, Noriko Toyosato,  Beverly Jiang <br><br> Defendants. | Case No. CV06-3131 GHK (PLAx) <br><br> **PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT FOR LIABILITY ON COUNTS I AND III AGAINST DEFENDANTS KIUCHI SHOTEN CO., LTD., HIDEO KIUCHI, I AND U, INC. (A/K/A "CRESCENDO BOOKS" AND "BOOK CUBE") AND NORIKO TOYOSATO** <br><br> Hearing Date:  May 12, 2008 <br> Hearing Time: 9:30 a.m. <br> Courtroom: Hon. Judge G.H. King |

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES ..........................................................................ii

INTRODUCTION .......................................................................................1

STATEMENT OF FACTS .............................................................................3

     Parties......................................................................................................3

     The Plaintiff's Journals ..........................................................................4

     The Defendants' Scheme ........................................................................6

     Plaintiff Publishers Discovery the Scheme...............................................9

     The Present Litigation...........................................................................10

ARGUMENT ............................................................................................10

     I.     THE PLAINTIFFS ARE ENTITLED TO SUMMARY JDUGMENT ON COUNT I BECAUSE THE DEFENDANTS FRAUDULENTLY PROCURED THE SUBSCRIPTIONS AT ISSUE .................................................................................12

          A.   The Defendants Made False Representations ..........................12

          B.   The False Statements Were Material ......................................14

          C.   Knowledge of Falsity .........................................................16

          D.   Intent to Deceive ................................................................16

          E.   Reliance ............................................................................17

          F.   Damages ...........................................................................19

     II.    THE PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT III BECAUSE THE DEFENDANTS' FRAUDULENT SCHEME CONSTITUTES AN UNFAIR AND DECEPTIVE BUSINESS PRACTICE ...................................................20

     CONCLUSION.......................................................................................23

i

# <u>TABLE OF AUTHORITIES</u>

## <u>Federal and State Cases</u>

*Agarwal v. Pomona Valley Medical Group, Inc.*,
    476 F.3d 665 (9th Cir. 2007)……………………………………...21

*Alliance Mortgage Co. v. Rothwell*,
    10 Cal.4th 1226 (1995)……………………………………………18

*Barquis v. Merchant Collection Ass'n*,
    7 Cal.3d 94 (1972)………………………………………………...20

*Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v.
    MDL Info. Sys., Inc.*, No. 04-05368, 2006 WL 3218719
    (N.D. Cal. Nov. 7, 2006)…………………………………………..20

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1987)………………………………………………10

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*,
    973 P.2d 527 (Cal.4th 1999)…………………………………....20, 21

*Century Surety Co. v. Crosby Ins., Inc.*,
    124 Cal.App.4th 116 (Cal.App. 4 Dist. 2004)…………………..15, 19

*Chabner v. United of Omaha Life Ins. Co.*,
    225 F.3d 1042 (9th Cir. 2000)……………………………………..21

*Farmers Ins. Exch. v. Superior Court*,
    826 P.2d 730 (1992)……………………………………………….20

*Haytor v. Fulmor*,
    92 Cal. App. 2d 392 (1949)…………………………………….16, 17

*Hynix Semiconductor Inc. v. Rambus Inc.*,
    441 F.Supp.2d 1066 (N.D. Cal. 2006)……………………………..12

*IBM v. Brown*,
    134 F.3d 377 (Table), 1998 WL 10751, (9th Cir. 1998)……………13

*In re Mediscan Research Ltd.*,
    940 F.2d 558 (9th Cir. 1991)……………………………………. 12

*OCM Principals Opportunity Fund v. CIBC World Markets Co.*,
    157 Cal. App. 4th 835 (2007)……………………………………..15

*Pacific Fruit Express Co v. Akron, Canton & Youngstown R.R. Co.*,
    524 F.2d 1025 (9th Cir. 1975)……………………………………..11

*Parker v. Winslow*,
    No. D048701, 2007 WL 2446569 (Cal.App. 4 Dist. Aug. 30, 2007)…18

*People v. Bestline Products*,
    61 Cal. App. 3d 879 (1976)…………………………………………12

*S.E.C. v. Druffner*,
    353 F.Supp.2d 141 (D. Mass. 2005)………………………………...17

*Solomont v. Polk Develop. Co.*,
    245 Cal.App.2d 488 (Cal.App.2d 1966)………………………………19

*Stout v. Turney*,
    22 Cal.3d 718 (1978)……………………………………………......19

*Triton Energy Corp. v. Square D. Co.*,
    68 F.3d 1216 (9th Cir. 1995)………………………………………...11

*United States v. Odutayo*,
    406 F.3d 386 (5th Cir. 2005)……………………………………….. 13, 14

*Vega v. Jones, Day, Reavis & Pogue*,
    121 Cal.App.4[th] 282, 292 (2004)……………………………………19

## Statutes

18 U.S.C. § 1342…………………………………………………………14

Cal. B & P.C. § 17200, *et seq*.…………………………………………..3, 20

Cal.Civ.Code § 1572………………………………………………………21

iii

## __INTRODUCTION__

This case arises from an elaborate international enterprise of individuals, entities and aliases formed for the specific purpose of defrauding Plaintiffs, some of the world's most prestigious publishers.  In particular,  Kiuchi Shoten Co., Ltd. (directly and through its wholly owned subsidiary, Defendant I and U, Inc. ("I&U")) orchestrated a fraudulent scheme -- involving its co-Defendants, hundreds of false identities, dozens of different addresses, and multiple accounts -- for the purpose of purchasing Plaintiffs' journals at rates available only to individual subscribers ("Individual Rates").  Plaintiffs filled these subscriptions with the understanding that they were being sent to individuals for personal use.  They were not.  Instead, I&U collected these journals and shipped them to Japan, where they were resold, principally Japanese hospitals.

The material facts are undisputed.  Remarkably, the Defendants have already admitted the key elements of this scheme.  For example, Defendant Noriko Toyosato, the former President of I&U, has already admitted that she:

- caused multiple Individual Rate subscriptions to be placed with Plaintiffs using false and assumed names;

- placed these subscriptions using multiple addresses and multiple e-mail addresses;

- and did so, knowing that these subscriptions were not for individual use at all, but were instead collected and shipped to Japan for resale, principally to Japanese Hospitals and other large institutions; and,

- knowing that the Defendants could not have procured these subscriptions at the Individual Rates without using these false aliases and addresses.

*See* Declaration of Noriko Toyosato ("Toyosato Dec.").

For its part, I&U similarly has admitted that: (i) it "directed its agents and/or employees to order subscriptions, and in some cases used aliases in place of the subscriber's actual name;" (ii) "addresses [at issue] hosted multiple subscribers"; and (iii) "publications were distributed to the individuals and entities who had ordered them in Japan."  *See* Answer of Defendants I and U Inc. and Lan Tu to Second Amended Complaint, ¶¶ 90, 94, 99 (attached as Exhibit 1 to the Declaration of Matthew N. Kane ("Kane Dec., Ex. 1")).[1]

Based on these undisputed facts, Plaintiffs are entitled to judgment as a matter of law on their fraud claim (Count I).  First, Defendants admittedly made false statements of fact, did so knowingly, and with the intent to deceive the Plaintiffs.[2] Second, Plaintiffs reasonably relied on these representations by sending Individual Rate subscriptions to purported individual subscribers at the addresses provided. Finally, Plaintiffs were damaged by distributing journals at a discounted Individual Rate that were never intended for individual use, but which were instead re-sold in Japan.

---

[1]   For the Court's reference, Plaintiffs have attached both the Defendants' Answer (Ex. 1) and the Corrected Second Amended Complaint (Ex. 6) to the Kane Declaration.

[2]   For purposes of this motion, the term "Defendants" means defendants Kiuchi Shoten Co., Ltd., Hideo Kiuchi, I And U, Inc. (A/K/A "Crescendo Books" And "Book Cube") and Noriko Toyosato.

In addition, Plaintiffs are entitled to judgment as a matter of law on their claim that Defendants' conduct amounted to unfair competition in violation of Cal. B & P.C. § 17200, *et seq.* (Count III). Indeed, the Defendants' scheme—involving dozens of false names and numerous addresses—was by its very design both unfair and deceptive.[3]

In view of these undisputed facts, Plaintiffs are entitled to judgment as a matter of law for liability on Counts I and III.

## STATEMENT OF FACTS

### Parties

The Plaintiffs are publishers of scientific, technical and medical information. Their products and services include journals, books, reference works, textbooks and databases, in print and electronic formats. (Declaration of Keith Abbott ("Abbott Dec.") ¶ 3; Declaration of Maureen Connors ("Connors Dec.") ¶3).

Defendant Hideo Kiuchi ("Mr. Kiuchi") is president, director and shareholder of defendant Kiuchi Shoten Co., Ltd. ("Kiuchi Shoten"). Kiuchi Shoten's business includes the distribution of publications to subscribers, including institutional subscribers in Japan. (Kane Dec., Ex. 1 ¶ 21, 25).

Defendant I & U is a California corporation wholly-owned by Kiuchi Shoten. I & U, by and through its agents, received ordering instructions from Kiuchi and/or Kiuchi Shoten, placed subscriptions with the Plaintiffs using various names and

3

addresses, and shipped these publications to Japan where they were ultimately distributed. (Kane Dec., Ex. 1 ¶ 22, 28; Toyosato Dec., ¶¶ 9, 24).

Defendant Noriko Toyosato ("Mrs. Toyosato") served as President of I and U from the 1990s until 2005.  (Declaration of Noriko Toyosato ("Toyosato Dec.") ¶ 11).[4]

### The Plaintiff's Journals

Each of the Plaintiffs publishes highly-specialized professional journals.  By way of example, some of the many specialty journals published by Plaintiffs include *Hepatology*, *Human Brain Mapping, Journal of Interventional Cardiology*, *Kidney International*, *Neurology*, *Annals of Surgery,* and *The American Journal of Obstetrics & Gynecology*.  (Abbott Dec. ¶ 3; Declaration of Maribel Burgos ("Burgos Dec.") ¶ 3; Connors Dec. ¶ 3).  These journals provide professionals with critical peer reviewed research and studies in advanced disciplines. (*Id.*)

Given the highly-specialized nature of their journals, Plaintiffs have a somewhat unique pricing structure: Plaintiffs sell their journals at different prices depending on the type of subscriber.  (*See, e.g.*, Connors Dec. ¶ 5).  For example, Plaintiffs rely on institutional sales for the income to make their journals economically feasible.  Plaintiffs therefore price their journals for sale to institutions, including hospitals and libraries, at an Institutional Rate.  (Abbott Dec. ¶ 5).  At the same time,

---

[4] The remaining defendants, Ichihiro Toyosato and Beverly Jiang each permitted their names to be used to purchase journals from the Plaintiffs for purposes of resale.  Given their relatively minor role in the events at issue and factual disputes concerning their interest, Plaintiffs are not seeking summary judgment against them at this time.

they offer subscriptions to individuals at prices deeply discounted from the Institutional Rate, sometimes as an accommodation to members of the scholarly societies that sponsor or own the journals ("Individual Rate").  (*Id.*).  The Plaintiffs' pricing structure reflects the fact that while only one person is permitted to use an Individual Rate subscription, potentially, hundreds of readers may access the Institutional Rate subscriptions purchased by hospitals and other large institutions. (Abbott Dec. ¶ 5; Burgos Dec. ¶ 5; Connors Dec. ¶ 5).

Each of the Plaintiffs distributed pricing information sheets for all of its journals making clear that certain prices were for individuals only and other prices were for institutions.  (Abbott Dec. ¶ 6; Burgos Dec. ¶ 6; Connors Dec. ¶ 6). Blackwell's price lists, for example, expressly provided, "Personal subscription rates are available for most journals.  These rates are applicable to orders for bona fide personal use only, and remittance should be by personal check or credit card."  (Kane Dec., Ex. 2).

There is a considerable difference between Institutional Rate and Individual Rate prices.  By way of example, Wolters's Individual Rate for *Neurology* was $306 in 2001.  The domestic Institutional Rate was $526 and the international Institutional Rate was $546.  (Connors Dec. ¶ 10).  In other words, there was a $240 difference between domestic Individual Rate and international Institutional Rate for that one journal alone.

1

2

## The Defendants' Scheme

3

4       The Defendants rotated dozens of aliases, multiple addresses, and email

5   accounts to place hundreds of Individual Rate subscriptions with the Plaintiffs.  In

6   turn, these subscriptions were sold to customers in Japan, principally Japanese

7   hospitals.

8

9       There is no dispute concerning the key aspects of this scheme.  Beginning in the

10  1990s, Defendants started placing subscriptions with the publishers.  (Toyosato Dec.

11  ¶¶ 3-9).  At the outset, Mr. Kiuchi approached Mrs. Toyosato saying that "he needed a

12  person who could subscribe to periodicals in the United States."  (*Id*. ¶4).  He further

13  explained that "he needed to get as many periodicals at the lower individual rate in the

14  United States as [they] could" to make the most sales in Japan.  (*Id*. ¶¶ 7-8).  In fact,

15  Mr. Kiuchi encouraged Ms. Toyosato to expand her universe of friends so that they

16  could place even more Individual Rate subscriptions under the friends' assumed

17  names.  (*Id*. ¶ 15).

18

19      Over the years, the Defendants' operating procedure remained essentially the

20  same.  First, Mr. Kiuchi provided Ms. Toyosato with a list of publications to obtain.

21  (*Id*. ¶¶ 9, 24).  The list identified the subscriptions to be placed and the applicable

22  rates.  (*Id*.).  In addition, Mr. Kiuchi forwarded funds to place the orders.  (*Id*.).  These

23  annual advancements were significant.  In 2004, for example, Mr. Kiuchi advanced

24  $1,394,932.01 to I&U to fund the journal purchases.  (Kane Dec., Ex. 3).

25

26

27

28

With the order list in hand, Ms. Toyosato and others placed subscriptions with various publishers.  (Toyosato Dec. ¶ 5).  To obtain these journals at the lower, Individual Rates, the subscriptions were placed in various names.  In some instances, I&U employees used their own names.  (*Id*. ¶¶ 14-17).  For example, Mrs. Toyosato and others used her name to place several subscriptions.  (*Id*. ¶¶ 10, 32).  In addition, I&U employees used the assumed names of friends who had agreed to have their names used to order periodicals.  (*Id*. ¶ 16).  Finally, I&U used dozens of fake aliases to place these subscriptions.  (*Id*. ¶ 17).  In fact, the Defendants produced an "End-User Address List" setting forth dozens of "actual names" and "fake names."  (Kane Dec., Ex. 4).

In addition to these various names, Defendants also used several different area addresses to receive these subscriptions.  For example, they used more than thirty different post office boxes.  (Toyosato Dec. ¶¶ 18-19).  In addition, they used several area residential addresses.  (Kane Dec., Ex. 4).  For example, several of the subscriptions at issue were sent to Ms. Toyosato's home at 1710 Rodeo Road, Arcadia, CA. (*Id*.).

The Defendants also created numerous email addresses for the various aliases that they were using.  (Toyosato Dec. ¶ 5).  With these email addresses, they communicated with the publishers using the assumed names.  (*Id*.).

When Plaintiffs received these orders from the purported individual subscribers, they processed the orders as Individual Rate subscriptions.  (*See, e.g.*, Abbot Dec., ¶

13; Burgos Dec., ¶ 12; Connors Dec., ¶ 12).  When they filled the orders, they relied on the representations that these subscribers were the individuals who they said they were.  (*Id.*).

After the Plaintiffs filled and shipped the orders, the Defendants collected them from the various addresses and shipped them to Japan for distribution.  (*Id.* ¶¶ 9, 24). Most of these subscriptions were ultimately distributed to Japanese hospitals.  (Kane Dec., Ex. 5 at Exhibits A, B, C).

By way of illustration, Defendants submitted an order to Plaintiff John Wiley & Sons, Ltd. for *Cancer* under the name "Chris Moore" in July 2004.  (Kane Dec., Ex. 5 at Ex. B p. 28 at 42).  "Chris Moore" was not a real person; he was instead expressly listed as a "fake name" on the Defendants' End-User Address List.  (Kane Dec., Ex. 4 at TOY0130).  When the Defendants received the journal in "Mr. Moore's" name, they ultimately shipped it to Japan for resale to "Tokyo HP."  (Kane Dec., Ex. 5 at Ex B p. 28 of 42).

Throughout, Mr. Kiuchi was aware of the tactics being used to procure these journals.  (Toyosato Dec. ¶¶ 8, 15, 22, 33).  In particular, Mr. Kiuchi was fully aware that multiple false and assumed names were being used to procure these journals. When, for example, Ms. Toyosato expressed some discomfort in using these aliases, Mr. Kiuchi told her that they needed to continue placing Individual Rate subscriptions to stay competitive and to be able to continue selling these journals to hospitals and doctors in Japan.  (*Id.* ¶ 33).  In addition, Mrs. Toyosato requested that Mr. Kiuchi

cease using the various fake and assumed names that she had used when she left I&U in 2005; he refused, saying that the names and post office boxes were proprietary and belonged to I&U.  (*Id.* ¶ 38).

Perhaps most importantly, the Defendants were fully aware throughout that, but for their use of the multiple names and addresses, they would not be able to purchase the periodicals at issue at the lower Individual Rates.  (*Id.* ¶ 21).

### **Plaintiff Publishers Discover The Scheme**

In 2005, Wiley received a series of money orders in connection with subscriptions being placed from a common address.  (Abbott Dec. ¶ 9).  Thereafter, Wiley, Elsevier, Blackwell, and Wolters undertook a comprehensive review of their respective subscription records, searching for patterns of names and addresses.  (*Id.*).

The Plaintiffs reviewed their subscription records for certain names.  They discovered that many of the names at issue were linked to multiple addresses.  (Abbott Dec. ¶ 9; Burgos Dec. ¶ 9; Connors Dec. ¶ 9).  The alias "Jim Ota," for example, was used to place subscriptions at least three different addresses:  (i) 1108 W. Valley Blvd. #6122, Alhambra, California;  (ii)  1710 Rodeo Rd., Arcadia, California; and (iii) 2168 S. Atlantic Blvd. #159, Monterey Park, CA.  (Kane Dec., Ex. 4).

Each address, in turn, hosted multiple different named subscribers.  There were, for example, nearly 30 different names used to place subscriptions at the 1710 Rodeo Rd. address - - Mrs. Toyosato's home.  (Kane Dec., Ex 4). Given the breadth of identities, addresses, and publications, it took Plaintiffs considerable time and

resources to: (i) discover the links among and between the various subscribers, addresses and publications; and (ii) determine which subscribers were real individuals and which were merely aliases.  (Abbott Dec. ¶ 10).

### **The Present Litigation**

Plaintiffs initiated suit in May 2006.  Given the multiple aliases at issue, they named several John Doe parties.  After Mrs. Toyosato provided initial discovery, it became clear that she was working with Mr. Kiuchi, I & U and Kiuchi Shoten, among others, in connection with the subscriptions at issue.  (Kane Dec., Ex. 5).  Thereafter, Plaintiffs Amended their complaint adding Mr. Kiuchi, Kiuchi Shoten and I & U as parties.  (*See* Kane Dec., Ex. 6).

Through discovery, Plaintiffs established certain key admissions concerning the defendants use of false statements, multiple addresses, and email addresses all used to effectuate the scheme.  (Toyosato Dec., ¶¶ 16-20, 21, 29).  These admissions, together with the additional undisputed facts set forth above, warrant judgment for Plaintiffs for liability on Counts I and III as a matter of law.

### **ARGUMENT**

Summary judgment is appropriate where "there is no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1987).  The nonmoving party cannot defeat summary judgment by

merely resting upon the allegations or denials in his pleadings and the "mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient." *Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

Plaintiffs seek summary judgment on the issue of liability on Counts I and III with respect to certain defendants.[5]  Fed. R. Civ. P. 56(c) ("A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.");  *see, also, Pacific Fruit Express Co v. Akron, Canton & Youngstown R.R. Co.,* 524 F.2d 1025 (9th Cir. 1975) (affirming summary judgment on the issues of liability).

As set forth below, the undisputed facts clearly establish that Defendants: (i) committed fraud; and (ii) violated California's unfair competition statute when they carried out a complex scheme using assumed and fake names along with a myriad of addresses to obtain subscriptions from the Plaintiffs at the Individual Rate for purposes of re-selling them in Japan, principally to Japanese hospitals.  Plaintiffs' motion for partial summary judgment must therefore be granted.

---

[5] Assuming they prevail, Plaintiffs respectfully request that the Court schedule hearing with respect to the amount of damages sustained as a result of the fraud and unfair and deceptive trade practices at issue in this motion.  Thereafter, the parties may address the remaining claim (Count III) and parties if necessary.

## I.   THE PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT I BECAUSE THE DEFENDANTS FRAUDULENTLY PROCURED THE SUBSCRIPTIONS AT ISSUE

Acting together, the Defendants effectuated an elaborate scheme—utilizing multiple false and assumed names, numerous addresses, and email accounts—to fraudulently obtain subscriptions from the Plaintiffs at the Individual Rate for purposes of re-selling them to institutions, principally Japanese hospitals.  It is well settled that the elements of fraud are: (1) representation; (2) falsity; (3) knowledge of falsity; (4) intent to deceive; and (5) reliance and resulting damage.  *See, e.g., Hynix Semiconductor Inc. v. Rambus Inc*., 441 F.Supp.2d 1066 (N.D. Cal. 2006) (reciting elements).[6]  Based upon the undisputed facts, the Plaintiffs can easily meet these elements.  Defendants are therefore entitled to judgment as a matter of law on Count I.

### A.   The Defendants Made False Representations

There is no dispute that the Defendants made a series of false statements. Among other things, the Defendants provided Plaintiffs with: (i) false names; (ii) assumed names; (iii) assumed addresses; and (iv) fictitious and assumed email addresses. (Toyosato Dec., ¶¶ 16-20; Kane Dec. Ex. 4).  Mrs. Toyosato, for example, admitted that: (i) she caused multiple Individual Rate subscriptions to be placed with

---

[6] A fraud claim will reach officers who did not actually make affirmative misrepresentations where they nonetheless participated and assisted in the fraud.  *See In re Mediscan Research Ltd.*, 940 F.2d 558 (9th Cir. 1991); *see also People v. Bestline Products*, 61 Cal. App. 3d 879, 918 (1976) ("All parties to a conspiracy to defraud are directly liable for all misrepresentations made pursuant to such conspiracy and anyone who knowingly aids and abets fraud or furnishes the means for its accomplishment is liable equally with those who actually make the misrepresentations.")

Plaintiffs using "imaginary" and assumed names with multiple addresses and multiple e-mail addresses; and did so, knowing that these subscriptions were not for individual use at all, but were instead collected and shipped to Japan for resale principally to Japanese Hospitals and other large institutions.  (*See* Toyosato Dec.  ¶¶ 16-20).  I&U similarly has admitted that it directed its agents to place subscriptions using aliases, multiple addresses that "hosted" more than one subscriber, and that these publications were ultimately distributed to individuals and entities in Japan. (Kane Dec., Ex. 1, ¶¶ 90, 94, 99).

Accordingly, there is no dispute that the Defendants used dozens of "fake names" to effectuate their scheme.  (Kane Dec., Ex. 4).  The Defendants use of fictitious names plainly constitutes a false representations.  *See, e.g., IBM v. Brown,* 134 F.3d 377 (Table), 1998 WL 10751, *2-3 (9th Cir. 1998) (affirming District Court's admission of evidence that defendant purchased equipment using fictitious names to show that defendant "had a regular practice of defrauding IBM").  The Defendants' use of assumed names similarly constitutes a false representation of material fact given that they never intended to use the subscriptions for personal use.

In *United States v. Odutayo*, 406 F.3d 386 (5th Cir. 2005), the court considered a similar case.  In *Odutayo*, the Defendant used "a number of aliases and addresses" to procure video and music discs from various distributors.  (*Id.* at 388).  The music distributors, including Columbia House and BMG Music Services, offered promotions sending customers eight or ten compact discs for free or a nominal charge in exchange

for the customer's promise to buy other discs at the regular, higher prices within a certain time period.  (*Id.*).  Odutayo collected nearly 3,000 discs using various "aliases and addresses" all without buying any discs at the regular prices.  (*Id.*).  When he attempted to take his collection from Texas to Nigeria, he was stopped by customs officials at the airport.  (*Id.* at 389).  Among other things, Odutayo was charged with nine counts of using false names and addresses to execute a mail fraud scheme in violation of 18 U.S.C. §1342.  (*Id.*). [7]  Ultimately, he was convicted and sentenced to five months in prison and three years of supervised release.  (*Id.*).

Although the present case obviously arises in the civil context, the facts are analogous.  Like Odutayo, the Defendants here used multiple "aliases and addresses" (indeed far more than the nine at issue in *Odutayo*).  Like Odutayo, the Defendants used these false and assumed names to procure numerous discounted sales (that were otherwise unavailable).  They did so knowing that the subscriptions were not placed for the named subscriber, but were instead obtained for purposes of resale in Japan.  Under these circumstances, these Defendants use of these fictitious and assumed names and addresses was unquestionably false.

**B.      The False Statements Were Material**

Having admitted that they made countless false statements, Defendants are left to argue that these false statements were somehow immaterial.  They were not.

---

[7]   The Federal Mail Fraud statute provides for criminal penalties for those who, by means of the Postal Service, "uses or assumes, or requests to be addressed by, <u>any fictitious, false, assumed title, name, or address, or name other than his own proper name</u>…"  18 U.S.C. § 1342 (emphasis supplied).

Instead, the Defendants use of false identities and addresses was undoubtedly material.  *See, e.g., Century Surety Co. v. Crosby Ins., Inc.*, 124 Cal.App.4th 116, 122 (Cal.App. 4 Dist. 2004) (submitting a false written statement which was subsequently used by an insurance company to determine applicable premium constituted a misrepresentation of a material fact).

Indeed, Defendants own conduct and statements make crystal clear that these false statements were material.  The multiple false identities and various addresses were essential to the scheme.  Mrs. Toyosato, for example, unambiguously attests, "Without using these multiple names and addresses, we did not think that we could continue to purchase the periodicals at the lower individual rates."  (Toyosato Dec. ¶ 21).  In addition, she states that Mr. Kiuchi told her that the false and assumed names were essential "to stay competitive and to be able to continue selling these journals to hospitals and doctors in Japan."  (*Id.* ¶33).  In short, the Defendants knew that they could not obtain these subscriptions at the lower Individual Rates without using the names—both fictitious and assumed—of purported "individual subscribers."

Most importantly, under California law, "materiality in the context of fraud is generally examined as an aspect of justified reliance."  *OCM Principals Opportunity Fund v. CIBC World Markets Co.*, 157 Cal. App. 4th 835, 863, n. 17 (2007) (citation omitted).  As set forth below, Plaintiffs reasonably relied on the representations that these subscriptions were being placed by individual subscribers when they filled these orders at the Individual Rates.  The false representations were therefore material.

## C.     Knowledge of Falsity

The Defendants were fully aware that these representations were false.  With respect to the false names, the Defendants obviously knew that: (i) they were not who they said that they were; and (ii) the subscriptions were not actually being purchased for individual use.  (*See, e.g.*, Toyosato Dec ¶ 16).  Indeed, Ms. Toyosato grew increasingly uncomfortable using these "imaginary names."  (*Id.*).  When she expressed her discomfort to Mr. Kiuchi, he advised her to continue placing these subscriptions using fake names so the business could remain competitive in Japan.  (*Id.*).

The Defendants were similarly fully aware of the misrepresentations concerning the assumed names used in this scheme.  When, for example, Mrs. Toyosato placed subscriptions in her name or in the name of her friend, Beverly Jiang, she knew that the journals were not being purchased for individual use.  (Toyosato Dec. ¶¶ 9, 10, 16, 21).  Instead, these assumed names were used simply as another means to procure these journals for resale.  (*Id.*).  Under these circumstances, the Defendants knew that their use of assumed names was false and misleading.

## D.     Intent to Deceive

Under California law, it is well settled that "A fraudulent intent to deceive another may be inferred from a material statement which is made with full knowledge that it is false. When one deliberately makes false representations of material facts, knowing them to be untrue, the law supplies the fraudulent intent to deceive."  *Haytor*

16

*v. Fulmor*, 92 Cal. App. 2d 392, 398 (1949) (citation omitted).  As set forth above, the Defendants were fully aware that they were using false and assumed names in their dealings with Plaintiffs to procure the journals at issue at the Individual Rates.  (*See* Toyosato Dec. ¶¶ 16-20).  In addition, Mrs. Toyosato was fully aware that I&U could not receive the benefit of the lower prices without using fictitious and assumed names. (*Id.*  ¶ 21).  Because these representations were made with full knowledge that they were false, fraudulent intent may be inferred as a matter of law.  *Haytor*, 92 Cal. App. 2d at 398.

Moreover, the Defendants' deceptive intent is plainly manifest in their tactics. The Defendants' use of rotating names, addresses, and email addresses was all designed to disguise their true business purpose as a reseller of journals in Japan.  *See. e.g., S.E.C. v. Druffner*, 353 F.Supp.2d 141, 150 (D. Mass. 2005) (holding that there was a strong inference of scienter where defendants used multiple account numbers to under fictitious names to "make it difficult for funds to detect and stop their market timing activities").  In short, the Defendants' entire scheme was designed to avoid detection.

Consequently, there can be no dispute that the Defendants intentionally misled the Plaintiffs with respect to the subscriptions at issue.

**E.    Reliance**

The Plaintiffs relied upon the Defendants' representations.  Reliance exists "when the misrepresentation or nondisclosure was an immediate cause of the

plaintiff's conduct…and when without such misrepresentation or nondisclosure, he or she would not, in all reasonable probability, have entered into the contract or other transaction." *Parker v. Winslow*, No. D048701, 2007 WL 2446569 (Cal.App. 4 Dist. Aug. 30, 2007) (citations omitted).  Here, the Plaintiffs relied on the representations that the subscriptions at issue were placed by individual subscribers when they fulfilled these orders at the Individual Rates.  (Abbott Dec., ¶ 13; Burgos Dec., ¶ 12; Connors Dec., ¶ 12).  Indeed, the Plaintiffs would not have sold the Individual Rate subscriptions to the defendants had they known that these subscriptions were ultimately resold, principally to institutions in Japan.  (Abbott Dec., ¶ 14; Burgos Dec., ¶ 13; Connors Dec., ¶ 13).

Moreover, the Plaintiffs' reliance was justifiable.  It is well settled that the reasonableness of Plaintiffs' reliance "may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts."  *Alliance Mortgage Co. v. Rothwell*, 10 Cal.4[th] 1226, 1239 (1995) (citations omitted).  Here, there is no question that the Plaintiffs' reliance was reasonable as a matter of law.  The Defendants' scheme was elaborate, involving countless different names and addresses.  In the ordinary course, the Plaintiffs process literally thousands of subscriptions. (*See, e.g.*, Abbot Dec., ¶ 8) ("Wiley and Blackwell process approximately 950,000 orders each year…").  Given the enormous volume of journal sales, Plaintiffs cannot reasonably be expected to investigate the actual identities of each and every one of their subscribers.  They are, instead, entitled to reasonably rely on their subscribers'

representations concerning their *own* identities.  *See Solomont v. Polk Develop. Co.*, 245 Cal.App.2d 488, 499 (Cal.App.2d 1966) (recognizing that where defendant had "superior knowledge," plaintiffs "were not required to make an independent investigation to check sources of information" and justifiably relied upon defendant's representations). [8]  Under these circumstances, Plaintiffs' reliance was certainly reasonable.

### F.   Damages

Based on these false representations, Plaintiffs sold numerous journals at the Individual Rates rather than the otherwise applicable Institutional Rates.  Here, the Plaintiff Publishers suffered damages when they received the lower Individual Rates rather than the higher Institutional Rates at which the subscriptions might reasonably have been sold in the absence of fraud.  *See Century Surety*, 124 Cal.App.4th at 123 (concluding that element of damages was properly alleged where plaintiff suffered the loss of a higher premium because defendant knowingly provided false information on its insurance application).  The Plaintiffs are therefore entitled to recover damages "for loss of profit or other gains which were reasonably anticipated."  *See Stout v. Turney*, 22 Cal.3d 718, 728-29 (1978) (internal citation omitted).  Although there may

---

[8]  Even if there was a practical way for the Plaintiffs to somehow investigate that each of their subscribers were bona fide individual subscribers, they would still prevail on their fraud claim.  *See Vega v. Jones, Day, Reavis & Pogue*, 121 Cal.App.4th 282, 292 (2004) ("[T]he contention that publicly available information cannot form the basis for a [fraud by concealment] claim is mistaken. The mere fact that information exists somewhere in the public domain is by no means conclusive."). Moreover, even "[n]egligence on the part of [a] plaintiff in failing to discover the falsity of a statement is no defense when the misrepresentation was intentional."  *Alliance*, 10 Cal.4th at 1239-1240 (citations omitted).  Here, the Defendants intentionally provided the Plaintiffs with false information.  In the face of these intentional misrepresentations, Defendants cannot complain that Plaintiffs should have detected their scheme.

be a dispute as to the precise amount of damages, there is no dispute that Plaintiffs suffered some damages by selling journals at the reduced Individual Rate on the basis of their false representations.

## II. THE PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT III BECAUSE THE DEFENDANTS' FRAUDULENT SCHEME CONSTITUTES AN UNFAIR AND DECEPTIVE BUSINESS PRACTICE

In addition to fraud, the Defendants' fraudulent scheme to procure Individual Rate subscriptions using aliases and multiple addresses amounts to an unfair and deceptive business practice under California law.  *See, e.g., Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v. MDL Info. Sys., Inc.*, No. 04-05368, 2006 WL 3218719, at *4-5 (N.D. Cal. Nov. 7, 2006) (fraudulent business practice constitutes deceptive practice under California Unfair Competition Act).

California's unfair competition statute prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. B & P. C. § 17200 *et seq*.  The California Supreme Court has held that the statute "defines 'unfair competition' very broadly, to include 'anything that can properly be called a business practice and that at the same time is forbidden by law.'"  *Farmers Ins. Exch. v. Superior Court*, 826 P.2d 730, 742 (1992) (internal quotation marks omitted) (quoting *Barquis v. Merchant Collection Ass'n*, 7 Cal.3d 94, 101 (1972).  "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539-40 (Cal.4th

1999) (internal quotation marks omitted).  Furthermore, in order to "forestall an action

under [section 17200], another provision must actually 'bar' the action or clearly

permit the conduct."  *Id.* at 540.

Here, the Defendants engaged in a business practice that was unlawful, unfair,

and fraudulent:  they submitted false information to the Plaintiff Publishers in order to

obtain journal subscriptions at discounted Individual rates so that they could then re-

sell the subscriptions to institutions at higher rates.[9]  This misconduct constitutes

"actual fraud" under Cal.Civ.Code § 1572.[10]  *See Chabner v. United of Omaha Life

Ins. Co.*, 225 F.3d 1042 (9th Cir. 2000) (concluding that under Section 17200, the

prerequisites for "borrowing" a violation were met where defendants allegedly

violated a California insurance statute).  In addition, the Defendants' conduct was also

an unfair business practice as "[c]learly, the public is likely to be deceived by

statements that are 'entirely false.'"  *Agarwal v. Pomona Valley Medical Group, Inc.*,

476 F.3d 665 (9th Cir. 2007) (concluding that doctor properly alleged claim that

---

[9]  In defining unfair competition, Section 17200 "refers to only business acts and practices, not competitive business acts or practices, and the term 'embraces *anything* that can properly be called a business practice.'"  *Agarwal v. Pomona Valley Medical Group, Inc.*, 476 F.3d 665, 675 (9th Cir. 2007) (quoting *Cel-Tech Comm., Inc.*, 973  P.2d at 539 (1999)).

[10]  This statutes defines "actual fraud" between two contractual parties as any of the following acts, committed with intent to deceive or to induce the other party to enter into the contract: "1. The suggestion, as fact, of that which is not true, by one who does not believe it to be true… 3. The suppression of that which is true, by one having knowledge or belief of the fact… or 5. Any other act fitted to deceive."  Cal.Civ.Code § 1572.  By affirmatively representing to the Plaintiffs that they were purchasing subscriptions for individual use when they knew the subscriptions would be re-sold and by submitting subscriptions by using false identities, the Defendants clearly committed "actual fraud."

healthcare network engaged in unfair competition by misleading patients with information that was entirely false).

The undisputed facts clearly establish that Defendants violated California's unfair competition statute when they fraudulently obtained subscriptions from the Plaintiffs at the Individual Rate for purposes of re-selling them to institutions.  Indeed, the entire scheme was created to deceive the Plaintiffs into shipping journals at the discounted Individual Rate.  The multiple names, addresses, and email addresses were created to masque the Defendants' true business and to avoid detection.  Therefore, summary judgment must be granted for the Plaintiffs on their unfair competition claim.

1

2

## CONCLUSION

3

4          For the foregoing reasons, Plaintiffs respectfully request that this Court grant

5    their Motion for Partial Summary Judgment and enter judgment in their favor on

6    liability for Counts I and III and grant such further relief as the Court deems just.

7

8                                          ELSEVIER INC., JOHN WILEY & SONS,
                                           INC., WILEY PERIODICALS, INC., WILEY-
9                                          LISS, INC.,JOHN WILEY & SONS, LTD.,
                                           WOLTERS KLUWER HEALTH, INC., and
10                                         BLACKWELL PUBLISHING, LTD.,

11                                         By their counsel,

12                                         /s/ Matthew N. Kane_____
                                           J. Andrew Coombs
13                                         517 East Wilson Avenue, Suite 202
                                           Glendale, California 91206
14                                         Telephone: (818) 500-3200
                                           Facsimile: (818) 502-3201
15
                                           Matthew N. Kane
16                                         Donnelly, Conroy, & Gelhaar LLP
                                           One Beacon Street, 33d Fl.
17                                         Boston, MA 02108
                                           Tel. (617) 720-2880
18

19

20   Dated: April 21, 2008

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I, _Daniel Villarreal_, certify and declare

I am over the age of 18 years, employed in the County of Los Angeles, State of California and my business address is: 3950 Verdugo View Drive, Los Angeles, California 90065

On April 21, 2008, I served a copy of the enclosed:

- **Plaintiffs' Notice and Motion for Partial Summary Judgment for Liability on Counts I and III Against Defendants Kiuchi Shoten Co., Ltd., Hideo Kiuchi, I and U, Inc. (A/K/A "Crescendo Books" and "Book Cube") and Noriko Toyosato**
- **Plaintiffs' Motion for Partial Summary Judgment for Liability on Counts I and III Against Defendants Kiuchi Shoten Co., Ltd., Hideo Kiuchi, I and U, Inc. (A/K/A "Crescendo Books" and "Book Cube") and Noriko Toyosato;**
- **Plaintiffs' Memorandum In Support of Their Motion for Partial Summary Judgment for Liability on Counts I and III Against Defendants Kiuchi Shoten Co., Ltd., Hideo Kiuchi, I and U, Inc. (A/K/A "Crescendo Books" and "Book Cube") and Noriko Toyosato;**
- **Statement Of Undisputed Material Facts In Support Of Plaintiffs' Motion For Partial Summary Judgment;**
- **[Proposed] Order;**
- **Affidavit Of Matthew N. Kane In Support Of Plaintiffs' Motion For Partial Summary Judgment;**
- **Declaration of Noriko Toyosato In Support Of Plaintiffs' Motion For Partial Summary Judgment;**
- **Declaration Of Maureen Connors In Support Of Plaintiffs' Motion For Partial Summary Judgment;**
- **Declaration of Keith Abbott In Support Of Plaintiffs' Motion For Partial Summary Judgment;**
- **Declaration of Maribel Burgos In Support Of Plaintiffs' Motion For Partial Summary Judgment**

On the following:

## (SEE BELOW SERVICE LIST)

I delivered by hand the above referenced documents to the above referenced addressees.

Executed on April 21, 2008 at Glendale, California.

_____

Daniel Villarreal

| | |
|---|---|
| Roger M. Franks<br>Jeff J. Astarabadi<br>James H. Millane<br>Jackson, DeMarco, Tidus, Petersen & Peckenpaugh<br>2030 Main Street, Suite 1200<br>Irvine, CA 92614<br>(949) 752-8585<br>(949) 752-0597 facsimile<br>*(Attorneys for Defendants Kiuchi Shoten Co., Ltd., Hideo Kiuchi, I and U, Inc. and Lan Tu a/k/a Joanne Tu)* | Kenneth I. Gross, Esq.<br>Law Offices of Kenneth I. Gross & Associates<br>849 S. Broadway, Suite 504<br>Los Angeles, CA 90014<br>(213) 627-0218<br>(213) 623-4628 facsimile<br>*Email: kigross@kigrosslaw.com*<br>*(Attorney for Defendant Lan Tu (a/k/a Joanne Tu)* |
| Bernard Cooper, Esq.<br>15 S. Raymond Ave., Suite 205<br>Pasadena, CA 91105<br>(626) 796-4030<br>(626) 796-4034 facsimile<br>*Email: bernardcooper@earthlink.net*<br>*(Attorney for Defendant Beverly Jiang)* | |
| Noriko Toyosato<br>1710 Rodeo Road<br>Arcadia, CA 91006<br>*Email: norikotoyosato@hotmail.com* | Ichiro Toyosato<br>1710 Rodeo Road<br>Arcadia, CA 91006 |

# PROOF OF SERVICE

I, ___Kenneth A. Shope___, certify and declare

I am over the age of 18 years, employed in the County of Los Angeles, State of California and my business address is: 3950 Verdugo View Drive, Los Angeles, California 90065

On April 21, 2008, I served a copy of the enclosed:

- **Plaintiffs' Notice and Motion for Partial Summary Judgment for Liability on Counts I and III Against Defendants Kiuchi Shoten Co., Ltd., Hideo Kiuchi, I and U, Inc. (A/K/A "Crescendo Books" and "Book Cube") and Noriko Toyosato**
- **Plaintiffs' Motion for Partial Summary Judgment for Liability on Counts I and III Against Defendants Kiuchi Shoten Co., Ltd., Hideo Kiuchi, I and U, Inc. (A/K/A "Crescendo Books" and "Book Cube") and Noriko Toyosato;**
- **Plaintiffs' Memorandum In Support of Their Motion for Partial Summary Judgment for Liability on Counts I and III Against Defendants Kiuchi Shoten Co., Ltd., Hideo Kiuchi, I and U, Inc. (A/K/A "Crescendo Books" and "Book Cube") and Noriko Toyosato;**
- **Statement Of Undisputed Material Facts In Support Of Plaintiffs' Motion For Partial Summary Judgment;**
- **[Proposed] Order;**
- **Affidavit Of Matthew N. Kane In Support Of Plaintiffs' Motion For Partial Summary Judgment;**
- **Declaration of Noriko Toyosato In Support Of Plaintiffs' Motion For Partial Summary Judgment;**
- **Declaration Of Maureen Connors In Support Of Plaintiffs' Motion For Partial Summary Judgment;**
- **Declaration of Keith Abbott In Support Of Plaintiffs' Motion For Partial Summary Judgment;**
- **Declaration of Maribel Burgos In Support Of Plaintiffs' Motion For Partial Summary Judgment**

On the following:

## (SEE BELOW SERVICE LIST)

I delivered by hand the above referenced documents to the above referenced addressees.

Executed on April 21, 2008 at Glendale, California.

*Kenneth A. Shope*

Kenneth A. Shope

| | |
|---|---|
| Roger M. Franks<br>Jeff J. Astarabadi<br>James H. Millane<br>Jackson, DeMarco, Tidus, Petersen & Peckenpaugh<br>2030 Main Street, Suite 1200<br>Irvine, CA 92614<br>(949) 752-8585<br>(949) 752-0597 facsimile<br>*(Attorneys for Defendants Kiuchi Shoten Co., Ltd., Hideo Kiuchi, I and U, Inc. and Lan Tu a/k/a Joanne Tu)* | Kenneth I. Gross, Esq.<br>Law Offices of Kenneth I. Gross & Associates<br>849 S. Broadway, Suite 504<br>Los Angeles, CA 90014<br>(213) 627-0218<br>(213) 623-4628 facsimile<br>*Email: kigross@kigrosslaw.com*<br>*(Attorney for Defendant Lan Tu (a/k/a Joanne Tu)* |
| Bernard Cooper, Esq.<br>15 S. Raymond Ave., Suite 205<br>Pasadena, CA 91105<br>(626) 796-4030<br>(626) 796-4034 facsimile<br>*Email: bernardcooper@earthlink.net*<br>*(Attorney for Defendant Beverly Jiang)* | |
| Noriko Toyosato<br>1710 Rodeo Road<br>Arcadia, CA 91006<br>*Email: norikotoyosato@hotmail.com* | Ichiro Toyosato<br>1710 Rodeo Road<br>Arcadia, CA 91006 |

## PROOF OF SERVICE

I, _Janeth Rodriguez_ , certify and declare

I am over the age of 18 years, employed in the County of Los Angeles, State of California and my business address is: 3950 Verdugo View Drive, Los Angeles, California 90065

On April 21, 2008, I served a copy of the enclosed:

- **Plaintiffs' Notice and Motion for Partial Summary Judgment for Liability on Counts I and III Against Defendants Kiuchi Shoten Co., Ltd., Hideo Kiuchi, I and U, Inc. (A/K/A "Crescendo Books" and "Book Cube") and Noriko Toyosato**
- **Plaintiffs' Motion for Partial Summary Judgment for Liability on Counts I and III Against Defendants Kiuchi Shoten Co., Ltd., Hideo Kiuchi, I and U, Inc. (A/K/A "Crescendo Books" and "Book Cube") and Noriko Toyosato;**
- **Plaintiffs' Memorandum In Support of Their Motion for Partial Summary Judgment for Liability on Counts I and III Against Defendants Kiuchi Shoten Co., Ltd., Hideo Kiuchi, I and U, Inc. (A/K/A "Crescendo Books" and "Book Cube") and Noriko Toyosato;**
- **Statement Of Undisputed Material Facts In Support Of Plaintiffs' Motion For Partial Summary Judgment;**
- **[Proposed] Order;**
- **Affidavit Of Matthew N. Kane In Support Of Plaintiffs' Motion For Partial Summary Judgment;**
- **Declaration of Noriko Toyosato In Support Of Plaintiffs' Motion For Partial Summary Judgment;**
- **Declaration Of Maureen Connors In Support Of Plaintiffs' Motion For Partial Summary Judgment;**
- **Declaration of Keith Abbott In Support Of Plaintiffs' Motion For Partial Summary Judgment;**
- **Declaration of Maribel Burgos In Support Of Plaintiffs' Motion For Partial Summary Judgment**

On the following:

## (SEE BELOW SERVICE LIST)

I delivered by hand the above referenced documents to the above referenced addressees.

Executed on April 21, 2008 at Glendale, California.

*Janeth Rodriguez*
Janeth Rodriguez.

| | |
|---|---|
| Roger M. Franks<br>Jeff J. Astarabadi<br>James H. Millane<br>Jackson, DeMarco, Tidus, Petersen & Peckenpaugh<br>2030 Main Street, Suite 1200<br>Irvine, CA 92614<br>(949) 752-8585<br>(949) 752-0597 facsimile<br>*(Attorneys for Defendants Kiuchi Shoten Co., Ltd., Hideo Kiuchi, I and U, Inc. and Lan Tu a/k/a Joanne Tu)* | Kenneth I. Gross, Esq.<br>Law Offices of Kenneth I. Gross & Associates<br>849 S. Broadway, Suite 504<br>Los Angeles, CA 90014<br>(213) 627-0218<br>(213) 623-4628 facsimile<br>*Email: kigross@kigrosslaw.com*<br>*(Attorney for Defendant Lan Tu (a/k/a Joanne Tu)* |
| Bernard Cooper, Esq.<br>15 S. Raymond Ave., Suite 205<br>Pasadena, CA 91105<br>(626) 796-4030<br>(626) 796-4034 facsimile<br>*Email: bernardcooper@earthlink.net*<br>*(Attorney for Defendant Beverly Jiang)* | |
| Noriko Toyosato<br>1710 Rodeo Road<br>Arcadia, CA 91006<br>*Email: norikotoyosato@hotmail.com* | Ichiro Toyosato<br>1710 Rodeo Road<br>Arcadia, CA 91006 |